UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RONALD L. WASHINGTON      CIVIL ACTION NO. 09-cv-0864

VERSUS      JUDGE STAGG

WARDEN, LOUISIANA STATE      MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

**Introduction**

      A Caddo Parish jury convicted Ronald Lee Washington ("Petitioner") of middle-grade theft of goods valued at more than $100 but less than $500, under the version of La. R.S. 14:67.10 then in effect. Petitioner's life of crime included at least two dozen convictions earned between 1977 and 2004, with several other charges dismissed as part of plea bargains. Many of those convictions were for felonies. Nine of the felonies were charged in an habitual offender bill of information, which allowed enhancement of the sentence for this theft felony. The result was life imprisonment.

      Petitioner pursued a direct appeal, State v. Washington, 939 So.2d 557 (La. App. 2d Cir. 2006), writ denied, 957 So.2d 148, 149 (La. 2007), and a post-conviction application. He now seeks federal habeas relief on claims of insufficient evidence to support the conviction and ineffective assistance of counsel. For the reasons that follow, it is recommended that the petition be denied.

**Sufficiency of the Evidence**

It was critical to obtaining a felony conviction to establish that the value of the goods taken exceeded $100. Ryan Pommier, an employee at the Foot Action store in Mall St. Vincent in Shreveport, testified that he was on the floor that day and had talked to Petitioner for 10 or 15 minutes. Petitioner had asked to see several different shoes, but had not wanted to purchase anything. Pommier went to help another customer. He turned around and saw Petitioner "in plain sight" putting jerseys in a bag. Pommier testified:

> Q. Can you describe the jerseys?
>
> A. They were red and black Michael Jordan jerseys, had number 23 on them. Brand new. We had just gotten them in the store. I remember them.
>
> Q. How many jerseys were there?
>
> A. Two.
>
> Q. Mr. Pommier, do you recall the value of those two jerseys?
>
> A. $60 apiece.
>
> Q. $60 apiece?
>
> A. Yes, sir.
>
> Q. So two would be?
>
> A. $120.

Tr. 210-11.

Pommier followed procedure and, rather than confronting the thief, told a cashier to call security. He then followed Petitioner out of the store, which Petitioner left without

paying for the merchandise. Pommier saw Petitioner hand one of the jerseys to assistant manager Tyrone Smith, who apparently confronted Petitioner in the hallway that leads to the mall parking lot. Petitioner then exited the mall with the other jersey. Pommier said that Smith did not know that Petitioner still had the other jersey. Pommier was certain that Petitioner left the store with two jerseys worth $60 each. Tr. 215-18.

 Mr. Pommier testified that the jerseys taken were for sale as regular merchandise, not on sale, and were brand new. He said the Jordan merchandise rarely went on sale. He was asked if there was any kind of clearance sale going on and he answered, "I don't recall." He was then asked if it was possible everything in the store was on sale. He said no and explained that sale racks are usually in the very back on the right-hand side. The jerseys taken were at the front of the store. Tr. 212.

 Defense counsel asked Mr. Pommier if he knew for a fact there was no store-wide clearance sale that day. Pommier said, "I don't recall. We've had a lot of sales since we've been bought out. I can't recall. I know for a fact those jerseys were not on sale." Tr. 214. He had testified earlier that Foot Locker bought Foot Action in October or November, 2004. The theft at issue happened August 10, 2004, before the transaction and the many sales that followed it. Tr. 208-09.

 Andrew Paul, a mall public safety officer, responded to the scene and made contact with the suspect and a person whom he testified was Mr. Pommier. (The person was probably Tyrone Smith, who did not testify; Pommier said he went back to the store after

Page 3 of 11

Petitioner exited the building.) Paul testified that "Pommier" was holding one jersey that he said he had recovered, but Paul did not see any jerseys on Petitioner himself. Tr. 218-22. A Shreveport police officer arrived. Paul testified that the officer patted down Petitioner and recovered the second jersey from under his clothing. Tr. 224-25.

Sgt. James Haacker of the Shreveport Police Department testified that he was working an off-duty job at the mall when he heard over the radio an announcement of the theft and that outside security had seen the suspect and stopped him. Haacker testified that he walked outside and saw a person he identified as Ryan Pommier, the parking-lot security employee, and (maybe) Andrew Paul, with the suspect. Haacker placed Petitioner under arrest, patted him down, during which he recovered a black and red number 23 Michael Jordan jersey in a plastic bag tucked underneath Petitioner's shirt. Haacker said that "Mr. Pommier" had the other jersey. Tr. 225-30.

Sgt. Haacker testified that the jersey he recovered had a price tag on it marked $60. He did not remember if the other jersey had a tag, but he recalls that he determined he had two jerseys valued at $60 each. Haacker told Petitioner he would be charged with felony theft. Petitioner, schooled in theft law by his many convictions, began to argue that the shirts were on sale so that it was not a felony offense. Tr. 232. Haacker was asked on cross examination if it was possible there was a sale price not on the tag but on the rack. Haacker replied that he went to the store and looked and "[t]he rack where the Michael Jordan number 23 jerseys [were] had no indication that those jerseys were marked down in any way, shape or form." He admitted, however, that he had no idea whether there was a general store-wide

clearance sale going on. Tr. 237. Haacker conceded that he had written only one jersey on one of his reports, but he was adamant in his testimony that there were two jerseys. Tr. 237-38. A unanimous jury found Petitioner guilty of theft of goods having a value of more than $100. Tr. 255-56.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

The trial judge denied a post-verdict motion for acquittal based on his opinion that "the evidence in this case was overwhelming." Tr. 265. The appellate court noted the Jackson standard, summarized the evidence, and agreed with the trial judge that "the evidence of guilt is indeed overwhelming." Tr. 393. The Supreme Court of Louisiana denied writs without comment.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency

challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012).

Petitioner argues that the value of the jerseys were not proven. He focuses on Mr. Pommier saying he could not recall whether there was a store-wide clearance sale at the time. Sgt. Haacker was also unsure whether there was a clearance sale that day. On the other hand, two witnesses testified clearly that the jerseys were priced at $60 each and not marked down either on a price tag or on the rack where they were kept. And there is not one scintilla of positive evidence in the record that there was any form of clearance or other sale in effect that day that would have reduced the price of the jerseys.

Petitioner also argues that there are discrepancies in the evidence about the number of jerseys taken. He points to the testimony of Ryan Pommier, who said that he did not go outside the mall, which contrasts with the two other witnesses who said Pommier was outside with them with a jersey in his hand. It appears the mall security officer and Sgt. Haacker mistakenly recalled that it was Pommier outside with them when it was actually the store manager Tyrone Smith, who Pommier testified took one of the jerseys from Petitioner. This misidentification does not undermine to any significant degree the extensive evidence that Petitioner took *two* jerseys from the store without paying for them.

The State's case was not perfect, but that is not what the law requires. There was plenty of evidence that Petitioner took two jerseys priced at $60 each. Some might find a way to quibble with the sufficiency of that evidence, but it certainly cannot be said that the state

court's decision was so wrong as to be an objectively unreasonable application of the deferential Jackson standard of review of the jury's verdict. The state appellate court, like the jury, had all of the evidence before it and conducted a thorough assessment of it before reaching a quite reasonable determination that there was sufficient evidence to support the conviction. Accordingly, habeas relief is not permitted on this claim.

**Ineffective Assistance of Counsel**

Petitioner originally urged that his counsel was ineffective for not objecting to hearsay testimony. State law remedies were not exhausted with respect to that claim, and Petitioner voluntarily dismissed it. Docs. 6 and 7. Petitioner's only other claim presented in this petition is that defense counsel was ineffective for not objecting to evidence of prior bad acts elicited by the prosecution.

Mr. Paul, the mall security officer, testified that he put out a description of the suspect. The prosecutor asked him what the description was. Paul said he could not remember, and then he went on in narrative form to describe how he eventually went outside and made contact with the suspect. Paul then testified:

> At that time (I) immediately recognized the individual as a prior ban, Ronald Washington. On July 31, 2004, just 10 days before that, there was an incident at Dillard's where a Dillard's security officer, who was a Caddo Parish sheriff's deputy, identified him as violating the mall ban as well as one of their bans from their store. And I had banned him on that occasion. So with that set in mind, I immediately recognized him from the prior incident.

The prosecutor then asked if a ban means that "somebody that's been kicked out of your mall and all the stores in it" and can't come back. Paul said that was correct, and the subject was not mentioned again. Tr. 220-21.

Petitioner argues in his post-conviction application that counsel was ineffective when he did not object to this testimony. The trial court judge reasoned that the witness did not refer to any actual crime, criminal charge, or conviction, so the claim was without merit. Tr. 485. The appellate court denied a writ application, writing:

> The trial court correctly found that testimony that the applicant had previously been banned from the store from which he shoplifted did not advert to the commission of any other crime, and there was no ineffectiveness shown by the failure to object.

Tr. 526. The Supreme Court of Louisiana denied writs without comment. Tr. 621-C.

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. <u>Strickland v. Washington</u>, 104 S.Ct. 2052, 2064 (1984).

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. <u>Schriro v. Landrigan</u>, 127 S.Ct. 1933, 1939 ( 2007). The <u>Strickland</u> standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied

it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

The witness's testimony did not mention a specific crime, but it did imply some form of likely misbehavior that resulted in Petitioner being banned from the mall. A reasonable person or juror would likely assume that a prior incident of shoplifting or similar wrongdoing was behind the ban, so the testimony was probably more harmful than suggested by the state courts. A quick-thinking defense counsel would have been wise to object to this testimony, if he could have done so before it was stated and without drawing undue attention to it. But that does not mean that counsel who did not make the objection performed below an objective standard of reasonableness. Some might argue that point, but the state court ruled differently, and the record before the federal court does not show that decision was one of the rare extreme malfunctions that amounts to an objectively unreasonable application of Strickland. Moreover, there is no reasonable likelihood that the verdict would have been different if not for this testimony. There was no question that Petitioner stole something from the store, and the challenged testimony did no more than support that fact. It would have no conceivable impact on the jury's findings with regard to the number and value of

items taken, which were the only facts really at issue. Habeas relief is not permitted on this final claim.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court

...

to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within **fourteen (14) days** from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 12th day of July, 2012.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE